[No. 37724-8-I.    Division One.    March 11, 1998.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY PAUL BURKE, *Appellant.*

*Kelly V. Curtin* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

KENNEDY, A.C.J. — Rodney Burke appeals his conviction under the first degree burglary statute, RCW 9A.52.020 as amended by Initiative 159, the "Hard Time for Armed Crime" Act. He contends that Initiative 159, section 9—which expands the first degree burglary statute to include all buildings, not just dwellings—violates the single subject rule of article II, section 19 of the Washington Constitution. He also contends that the jury's special verdict, finding that he was *not* armed during the burglary, is irreconcilably inconsistent with its general verdict finding him guilty of first degree burglary, rendering his conviction void.

Because the provision of Initiative 159, section 9 that expands the first degree burglary statute to include armed burglaries of nonresidential buildings falls squarely within Initiative 159's legislative title's single subject of "increasing penalties for armed crime," Initiative 159—as applied to Burke—does not violate the single subject rule. And, based on the evidence presented, the instructions given, and the specific special verdict questions posed, the jury's special verdict finding that Burke was not actually armed during the burglary is not irreconcilable with its general verdict finding him guilty of first degree burglary. Accordingly, we affirm Burke's first degree burglary conviction.

## SUBSTANTIVE FACTS

In the early morning hours of August 9, 1995, Gary Tremmel's neighbor called 911 to report two suspicious

men in Tremmel's backyard. Patrol Deputy Greg Rasar of the Snohomish County Sheriff's Office and Sergeant Michael Tow of the Granite Falls Police Department responded to the call. In the woods behind Tremmel's residence, the officers located Rodney Burke, and, approximately six to eight feet away, Timothy Alfonso.

Deputy Rasar recovered a loaded semiautomatic pistol lying next to Alfonso. Rasar also found a small bag of ammunition in Alfonso's clothing. Just north of where the officers entered the woods, about twenty yards from Tremmel's backyard workshop, they found a large portable electric air compressor. Marks in the grass indicated that the compressor had been dragged from the direction of the workshop. Tremmel told Deputy Rasar that he owned the air compressor and that it was in his workshop when he went to bed that night.

## PROCEDURAL HISTORY

The State charged Burke and Alfonso with first degree burglary and sought deadly weapon sentence enhancements. The trial court consolidated their trials. At trial, Alfonso testified that he "tossed" the firearm because, as a convicted felon, he could not legally possess it. Alfonso also testified that he did not show or tell Burke about the firearm, which he concealed in his coat pocket. Burke did not testify.

The trial court instructed the jury on the elements of first degree burglary, accomplice liability, and the elements for a firearm penalty enhancement: "That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice was armed with a deadly weapon." Clerk's Papers at 34 (Instruction 6). "For purposes of this case, the term 'deadly weapon' means any firearm, whether loaded or not." Clerk's Papers at 39 (Instruction 11). "If one person committing a burglary is armed with a deadly weapon, an accomplice to the burglary may be convicted of first degree burglary, even though that

accomplice is unaware of the other's possession of a weapon." Clerk's Papers at 42 (Instruction 14).

> For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant or an accomplice was armed with a firearm at the time of the commission of the crime.

> The term "firearm" means a weapon or device, whether loaded or unloaded, from which a projectile may be fired by an explosive such as gun powder.

> If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved.

Clerk's Papers at 40 (Instruction 12).

But the special verdict forms did not encompass accomplice liability language: "Was the defendant RODNEY PAUL BURKE armed with[ ]a firearm at the time of the commission of the crime?" Clerk's Papers at 24. "Was the defendant TIMOTHY ALLEN ALFONSO armed with a firearm at the time of the commission of the crime?" Clerk's Papers at 55.

The jury convicted Alfonso of first degree burglary and answered his "armed with a firearm" special verdict form, "Yes." Clerk's Papers at 55-56. The jury also convicted Burke of first degree burglary but answered his "armed with a firearm" special verdict form, "No." Clerk's Papers at 24-25. Burke appeals.

## DISCUSSION

### I. Single Subject Rule

Burke contends that Initiative 159, section 9—which expands the first degree burglary statute to include all buildings, not just dwellings—violates article II, section 19 of the Washington Constitution because it does not fall fairly within the single subject of Initiative 159's legislative title. The State contends that section 9, as applied to Burke, falls squarely within the legislative title's single subject.

██ The single subject rule provides, "No bill shall embrace more than one subject, and that shall be expressed in the title." Wash. Const. art. II, § 19. "Two policies underlie the constitutional provision: the prevention of logrolling, or pushing legislation through by attaching it to other necessary or desirable legislation, and general notice to members of the Legislature and the public of what is contained in the proposed legislation." *State v. Broadaway*, 133 Wn.2d 118, 124, 942 P.2d 363 (1997) (citations and internal quotation marks omitted).

██ Initiative 159's legislative title, the relevant title for purposes of the single subject rule "where an initiative to the Legislature is enacted by the Legislature," contains the single subject of "increasing penalties for armed crime." *Broadaway*, 133 Wn.2d at 126-28. Because Initiative 159's legislative title is restrictive, the provisions of the initiative that do not fall "fairly" within the restrictive title's subject will not be enforced. *Id.* at 127 (citing *State v. Thorne*, 129 Wn.2d 736, 758, 921 P.2d 514 (1996)). But even if some provisions of Initiative 159 are invalid, the valid provisions remain in effect:

> The provisions of Initiative 159 are severable such that passage of valid portions may be presumed, and elimination of those provisions which Defendant alleges are unconstitutional would not render the remainder of the Act incapable of accomplishing the legislative purpose of increasing penalties for numerous armed crimes.

*Broadaway*, 133 Wn.2d at 128. Therefore, we will only consider those provisions of the initiative that are actually at issue on appeal. *Id.* at 129.

██ Section 9 "expands the crime of burglary in the first degree to cover entry or remaining in a building, not just a dwelling, with the intent to commit a crime against a person or property while armed with a deadly weapon," *Broadaway*, 133 Wn.2d at 123 n.1.

BURGLARY IN THE FIRST DEGREE. (1) A person is guilty of burglary in the first degree if, with intent to commit

a crime against a person or property therein, he or she enters or remains unlawfully in a ((dwelling)) building and if, in entering or while in the ((dwelling)) building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

LAWS OF 1995, ch. 129, § 9.[1] Under pre-Initiative 159 law, Burke would have been guilty of only second degree burglary for burglarizing the workshop, a nondwelling building, while armed. RCW 9A.52.030. Therefore, the "armed with a deadly weapon" provision of section 9 falls squarely within Initiative 159's restrictive title's single subject of "increasing penalties for armed crime."

Burke, however, contends that because section 9 also expands the first degree burglary statute to include unarmed assaults committed during burglaries of nondwelling buildings, section 9 as a whole does not fall fairly within the subject of "increasing penalties for armed crime." But he was not convicted under that provision of section 9. Therefore, we will not consider Burke's contention in this case. *Broadaway*, 133 Wn.2d at 129.

In sum, the "armed with a deadly weapon" provision of section 9—the provision under which Burke was convicted—falls squarely within Initiative 159's restrictive title's single subject of "increasing penalties for armed crime." Therefore, Burke's first degree burglary conviction did not result from "logrolling." Accordingly, we hold that Initiative 159, section 9's "armed with a deadly weapon" provision does not violate the single subject rule of article II, section 19 of the Washington Constitution.

## II. Jury Verdicts

Burke also contends that the jury's special verdict finding that he was *not* armed during the burglary is irreconcilably inconsistent with its general verdict finding him guilty

---

[1] The Legislature later amended the first degree burglary statute to remove the last "therein." LAWS OF 1996, ch. 15, § 1.

of first degree burglary. The State contends that the verdicts can be reconciled and, even if they cannot, Burke waived his right to appeal this issue by failing to object to the allegedly inconsistent jury verdicts before the trial court discharged the jury. Although the record indicates that Burke failed to object to the verdicts, we do not reach the waiver issue[2] because the jury's special and general verdicts are not irreconcilably inconsistent.

■ ■ "Where the general verdict and the special finding can be harmonized by considering the entire record of the case, including the evidence and the instructions, it is the duty of the court to harmonize them." *State v. Eker*, 40 Wn. App. 134, 140, 697 P.2d 273 (1985). If the special verdict "is susceptible of two constructions, one of which will support the general verdict and the other of which will not, [the court] will give such construction as will support the general verdict." *State v. Robinson*, 84 Wn.2d 42, 45, 523 P.2d 1192 (1974). That is, if "there are two reasonable interpretations, [the court] must accept the one consistent with the general verdict of guilty." *Id.* at 46. Where the special verdict cannot be reconciled with the general verdict, the judgment is void. *State v. Wedner*, 24 Wn. App. 346, 347-48, 601 P.2d 950 (1979).

■ During Burke's and Alfonso's consolidated trials, Alfonso testified that he was armed with a firearm. Alfonso also testified, without contradiction, that Burke did not know about the firearm, which Alfonso concealed in his coat pocket. The trial court instructed the jury that in order to convict each defendant of first degree burglary, it must find that "in so entering or while in the building or in immediate flight from the building the defendant or an accomplice was armed with a deadly weapon." Clerk's

---

[2]*But see State v. Barnes*, 85 Wn. App. 638, 668, 932 P.2d 669 (holding that a defendant must object to allegedly inconsistent jury verdicts before the trial court discharges the jury), *review denied*, 133 Wn.2d 1021 (1997). The *Barnes* court cited a civil case for this proposition, *Gjerde v. Fritzsche*, 55 Wn. App. 387, 393, 777 P.2d 1072 (1989), and did not analyze whether a different rule may be applicable in criminal cases. We do not need to decide that question to resolve this appeal.

Papers at 34 (Instruction 6). Because Alfonso testified that he was armed, the record clearly supports the jury's finding that "the defendant or an accomplice was armed with a deadly weapon." Clerk's Papers at 34 (Instruction 6).

For purposes of the sentence enhancement special verdicts, the trial court instructed the jury, "If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved." Clerk's Papers at 40 (Instruction 12). But the special verdict forms asked only, "Was the defendant RODNEY PAUL BURKE armed with[ ]a firearm at the time of the commission of the crime?" and "Was the defendant TIMOTHY ALLEN ALFONSO armed with a firearm at the time of the commission of the crime?" Clerk's Papers at 24, 55. The jury, in a manner consistent with the undisputed evidence at trial, answered the specific questions posed to it, i.e., Alfonso was armed but Burke was not.

Because the special verdict form did not ask whether Burke was "deemed to be armed" or whether Burke's accomplice was armed, a latent ambiguity exists between the questions posed by the special verdicts forms and the instructions given by the trial court. But that ambiguity is one that is only necessarily apparent to judges and lawyers more learned in the law than the average lay jury. Therefore, under our duty to harmonize jury verdicts whenever possible, *Eker*, 40 Wn. App. at 140, we must assume that the jury drew a distinction between Burke's being "deemed to be armed" as required by the instructions and actually being "armed" as required by the special verdict form, and then answered the specific question posed to it.

This special verdict is similar to the one rendered in *State v. Kimball*, 14 Wn. App. 951, 546 P.2d 1217 (1976). There, the defendant was convicted of first degree murder for aiding and abetting his codefendant in the stabbing death of the victim. The jury was instructed that one who, without possession of a deadly weapon, aids and abets one who possesses a deadly weapon in the commission of a crime is

equally guilty with the principal of possessing a deadly weapon. The jury found by special verdict that the codefendant was armed with a deadly weapon but that the defendant was not. The defendant appealed, arguing that the special verdict was inconsistent with the general verdict. In rejecting this argument, this court ruled that the special verdict instruction:

> did not bind the jury, but presented a theory under which it could find that Kimball "possessed" a deadly weapon. [The instruction] required a conclusion based upon the law expressed in the instruction, which is contrary to a literal fact which the jury could have believed—that Kimball, in fact, did not have a deadly weapon in his possession when the killing took place. The jury was asked, in effect, to make a finding of possession in law, or constructive possession, a legal fiction, as opposed to possession in fact. The special verdict is thus an expression of the opinion of the jury upon a legal proposition, . . . and should not be allowed to control the fact found by the general verdict and be held as vitiating it.

*Kimball*, 14 Wn. App. at 954-55 (citations and some internal quotation marks omitted). The *Kimball* court also noted that the

> special finding as to whether a defendant was armed with a deadly weapon adds nothing to the elements of first-degree murder and is not a special finding of fact related to the offense charged, as are special interrogatories. It has no relevancy to Kimball's guilt of the crime for which he has been convicted, but only as to punishment.

*Kimball*, 14 Wn. App. at 955.

Based on the evidence presented, the instruction given, and the specific special verdict questions posed, we conclude that the jury's general verdict finding Burke guilty of first degree burglary is not irreconcilably inconsistent with its special verdict finding that he was not armed during the burglary. We also note that the latent ambiguity between the instructions and the special verdict form actually benefited Burke. That is, he was found not to be armed

and, thus, will not suffer an enhanced penalty. Accordingly, Burke is not entitled to a new trial on the first degree burglary charge.

In sum, Initiative 159, section 9's "armed with a deadly weapon" provision does not violate the Washington Constitution's single subject rule. Furthermore, the jury's special verdict finding that he was not armed during the burglary is not irreconcilably inconsistent with its general verdict finding him guilty of first degree burglary. Accordingly, Burke's first degree burglary conviction is affirmed.

GROSSE and ELLINGTON, JJ., concur.

Review denied at 136 Wn.2d 1018 (1998).