# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>QUINCY VALENTINO HAWKINS,<br><br>Appellant. | No. 86176-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Hawkins appeals from his resentencing conducted pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), which struck down Washington's statute prohibiting simple drug possession. He argues that we should remand for another resentencing because (a) the resentencing court mistakenly believed it could not take his post-conviction rehabilitation into account in determining his new sentence and (b) his attorney provided ineffective assistance at and before the resentencing hearing. Hawkins also contends that the trial court erred by imposing discretionary legal financial obligations (LFOs) as part of his sentence. We remand for the trial court to determine whether to impose restitution interest under RCW 10.82.090(2) and expressly strike from Hawkins' judgment and sentence several LFOs (as detailed below) that may not be imposed on indigent defendants. In all other respects, we affirm.

I

Following a jury trial in 2008, Hawkins was convicted of second degree murder, second degree assault, and first degree unlawful possession of a firearm. The sentencing court imposed a sentence on the high end of the standard range, totaling 391 months. Because Hawkins' offender score included an offense for possession of a controlled substance, Hawkins filed a motion under CrR 7.8(b) to correct his judgment and sentence following our Supreme Court's decision in *Blake*.

Hawkins' resentencing memorandum included evidence of his post-conviction rehabilitation. Hawkins also argued that the court should impose an exceptional sentence below the standard range based on his youthfulness at the time he committed the crimes at issue. Lastly, Hawkins requested a mitigated sentence under RCW 9.94A.535(1)(a) based on his assertion that the "victim was an initiator, willing participant, aggressor, or provoker of the incident."

The trial court scheduled a resentencing hearing and, at the conclusion of the hearing, declined to impose an exceptional sentence below the standard range. Instead, after considering all of the evidence presented and excising the prior convictions subject to *Blake*, the court imposed a sentence in the middle of the standard range, totaling 336 months. Hawkins appeals.

II

A.      Resentencing Error

Hawkins argues that the resentencing court abused its discretion because it sentenced him under the "mistaken belief it could not take his rehabilitation into account in determining the sentence." We disagree.

Hawkins' argument misconstrues controlling precedent. In *State v. Ramos*, 187 Wn.2d 420, 449, 387 P.3d 650 (2017), our Supreme Court held that trial courts are *not required* to consider evidence of post-conviction rehabilitation "as a basis for an exceptional sentence downward." Instead, where evidence of post-conviction rehabilitation exists, such evidence is relevant, if at all, to the trial court's decision regarding the length of a sentence within the standard range. *See State v. Dunbar*, 27 Wn. App. 2d 238, 241, 532 P.3d 652 (2023) (acknowledging that Dunbar may seek a sentence at the low end of the standard range based on evidence of post-conviction rehabilitation).

The trial court here appropriately considered evidence of Hawkins' post-conviction rehabilitation in determining Hawkins' sentence within the standard range. At the outset of its ruling, the court stated, "I . . . hope that everyone sees that I have reviewed *everything* that's been supplied to me." (Emphasis added.) When it explained its ruling, the court again confirmed that it had reviewed all of the submitted evidence:

> When I reviewed this case and -- again, what I don't see a lot of direct evidence of is -- while Mr. Hawkins had a difficult upbringing, I didn't see a lot of direct evidence of the impact on this particular event. And I say that because I am declining to give a below standard-range sentence.

> I don't think under the facts of this case, after considering *all of the submissions* that have been given, that that's appropriate. However, that does not mean that the Court does not consider some of the mitigating factors of youth as to where within the standard range to fall.

> The prior [sentencing] court judge, back when this trial happened, gave Mr. Hawkins a high end of the standard-range sentence on all counts and, for me -- again, *taking into account the evidence that's been presented*, I don't think a high end of the standard range is appropriate either.

(Emphasis added.)  As can be seen, the court did not state or even suggest that it had restricted its review of the evidence; instead, it considered everything that the parties had submitted, as required by precedent.  *See Dunbar*, 27 Wn. App. 2d at 241 ("unless the reviewing court restricts resentencing to narrow issues, any resentencing should be de novo").

The record is equally clear that the trial court's reference to "everything that's been supplied to me" included evidence regarding Hawkins' post-conviction rehabilitation.  Hawkins' resentencing memorandum expressly addressed and attached evidence of post-conviction rehabilitation.  Additionally, to support Hawkins' request for a sentence at or below the low end of the standard range, Hawkins' family members provided statements describing his post-conviction rehabilitation.  For example, Hawkins' sister stated:

> He has taken the necessary steps to better himself. In doing so, he has completed courses of substance abuse and domestic violence; he has also furthered his education so he can be an addition to society in a productive manner. He has made the necessary changes within to be a better mentor and example for our youth.

Hawkins' fiancé similarly stated:

> He wrote a course called "Am I My Worst Enemy" that I helped him copyright. He also started a nonprofit organization called Locate the Nation to focus on adolescence within the community in which he grew up . . . to let them know that they are not forgotten and give the support and knowledge that inspires to never give into false realities of the street or peer pressure from other's choices.

Thus, in determining Hawkins' sentence within the standard range, the record shows that the trial court considered everything that the parties had submitted, which includes evidence of post-conviction rehabilitation, and exercised its

discretion accordingly. Whereas the sentencing court imposed a sentence on the high end of the standard range in 2008, the resentencing court imposed a sentence in the middle of the standard range in 2023.

On this record, Hawkins' reliance on *Dunbar* is misplaced. The defendant there sought relief under *Blake* to correct his offender score because it included two convictions for possession of a controlled substance. *Dunbar*, Wn. App. 2d at 239-40. At resentencing, similar to Hawkins here, Dunbar submitted evidence of post-conviction rehabilitation. *Id.* at 241. The resentencing court responded to that evidence as follows:

> Mr. Dunbar has provided the Court with information about what he has done since being incarcerated, and the problem is . . . that it is basically a look back, and by that, I have regular resentencings that I do where the state's position is . . . that *the Court cannot take that into consideration and shouldn't take that into consideration*.

*Id.* at 242 (emphasis added). The court then imposed the same high-end sentence that the original sentencing court imposed. *Id.* at 242.

Dunbar appealed, and this court remanded for a new resentencing. The court noted that issuing "the same sentence does not necessarily correlate with the second court considering itself precluded from exercising discretion." *Id.* at 243. It nevertheless remanded for a new resentencing because "the resentencing court's comments could be taken as adopting the sentencing court's judgment without reviewing the relevant facts and considerations anew." *Id.* at 243. And in doing so, we instructed the trial court to "consider new evidence and arguments of the parties, including evidence of Daniel Dunbar's rehabilitation." *Id.* at 250. But while our holding in *Dunbar* strongly supports Hawkins' argument that the resentencing court here may consider evidence of post-conviction rehabilitation,

the record shows that the court did so—resulting in a shorter sentence at the middle rather than the high end of the standard range. Consequently, *Dunbar* is distinguishable and does not require remand for another resentencing.

In short, because the record shows that the resentencing court appropriately considered Hawkins' evidence of post-conviction rehabilitation in determining the length of his sentence within the standard range, there was no abuse of discretion.

B.     Ineffective Assistance of Counsel

Hawkins next argues that he is entitled to resentencing because his lawyer provided ineffective assistance. We disagree.

"Both the United States and Washington Constitutions guarantee a criminal defendant the right to effective assistance of counsel." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). "To demonstrate ineffective assistance of counsel, a defendant must make two showings." *Id.* at 247. First, the defendant must show that "defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances." *Id.* at 247-48. And second, the defendant must show that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 248. "Failure to establish either prong of the test is fatal to an ineffective assistance claim." *State v. Arumugam*, __ Wn. App. 2d __, 545 P.3d 363, 374 (2024).

First, Hawkins argues that his lawyer provided ineffective assistance by allegedly "conceding rehabilitation was not a legitimate factor for consideration" in

resentencing. This argument fails because defense counsel made no such concession. At the resentencing hearing, the prosecutor asked "whether or not the Court is going to consider post-conviction rehabilitation" because "that does change some of the nature of the State's argument." Defense counsel responded that while post-conviction rehabilitation is not the basis for Hawkins' request for "an exceptional sentence based on youthfulness," one of Hawkins' arguments for a lesser sentence (but not his only argument), "we think that the post-conviction rehabilitation is something that's still germane for the Court to consider." Contrary to Hawkins' argument, his lawyer clearly stated that evidence of post-conviction rehabilitation was and remained relevant in resentencing.

Nor did Hawkins' lawyer retreat from that view, as Hawkins also claims. Hawkins points to the following colloquy:

> [MS. NORTH (prosecutor)]: Just to make it clear, the State is not only just asking that post-conviction rehabilitation doesn't come in but it's not germane to the O'Dell[1] analysis that occurs.
>
> This is a youthful offender case where we're looking at -- for looking at the defendant's ability to be rehabilitated.
>
> The State doesn't believe that's part of the SRA analysis of youthful mitigation; it's more of whether or not the instant crime reflected youthful characteristics enough to mitigate -- to impose a mitigated sentence.
>
> THE COURT: And perhaps we're splitting hairs. I'm not sure that I heard Mr. Downs necessarily disagreeing with that --
>
> MS. NORTH: Yeah.
>
> THE COURT: It's not a *Houston-Sconiers*[2] situation, so we don't have that aspect of it, and, again, just for the parties'

---

[1] *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015).
[2] *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017)

awareness, I guess, not only did I go back and read *O'Dell*, I've tried to look up basically almost every case that's cited to *O'Dell*, since there are several. Some are published; some are unpublished, a lot of unpublished cases, a lot of Division II unpublished cases that basically, as I read them, all state that, under *O'Dell*, the court can consider youthfulness; it's not required to consider youthfulness. I don't think any of those talked about rehabilitation issues.

So I'll ask you, Mr. Downs, is that your understanding of what *O'Dell* and its progeny stand for?

MR. DOWNS [Defense attorney]: Yes, that's correct.

The trial court then responded, "All right. So with that, Mr. North, you may proceed."

The foregoing exchange does not support Hawkins' argument that his lawyer wrongly conceded that rehabilitation could not properly be considered in resentencing. The cases cited by the trial court—*O'Dell* and *Houston-Sconiers*—address consideration of youthfulness as a mitigating factor in sentencing. *State v. Houston-Sconiers*, 188 Wn.2d 1, 23-24, 391 P.3d 359 (2015); *O'Dell*, 183 Wn.2d at 688-89. Thus, when the statements of Hawkins' attorney are properly considered in context, the record shows that counsel merely conceded that evidence of post-conviction rehabilitation was not germane to Hawkins' *separate and additional* argument that the court should impose an exceptional sentence below the standard range based on Hawkins' youthfulness at the time he committed the crimes at issue. Because Hawkins' lawyer did not concede that rehabilitation "was not a legitimate factor for consideration" in resentencing, as Hawkins claims, we reject this argument.

Second, while Hawkins recognizes that *Dunbar* (discussed above) was decided *after* the resentencing hearing, he argues that the authorities discussed in

*Dunbar* "were not new" and that his lawyer provided ineffective assistance by failing to cite those authorities, "all of which favor consideration of rehabilitation." Our Supreme Court has held that "[w]here an attorney unreasonably fails to research or apply relevant statutes without any tactical purpose, that attorney's performance is constitutionally deficient." *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). But here, Hawkins does not, and cannot, establish that the result of the proceeding would have been different if his attorney had cited these additional authorities because, as noted previously, the record shows that the trial court considered Hawkins' evidence of post-conviction rehabilitation as *Dunbar* and the authorities cited therein require. Accordingly, Hawkins' ineffective assistance of counsel argument necessarily fails based on the absence of prejudice (the second prong of the ineffective assistance of counsel test).

C.  Imposition of Legal Financial Obligations

At the conclusion of the resentencing hearing, the trial court decided to waive all discretionary LFOs. Hawkins argues that the judgment and sentence is not definite and certain as to which LFOs are discretionary and which are not, as required by controlling precedent. *See, e.g., Grant v. Smith*, 24 Wn.2d 839, 840, 167 P.2d 123 (1946) ("It is the rule in this state that a sentence for violation of law must be definite and certain."). As a result, Hawkins asks this court to remand for the trial court to amend the judgment and sentence. The State concedes this point and states, "On remand, the superior court should expressly waive the attorney fees, criminal filing fees, extradition costs, supervision fees, collection costs, appellate costs, and nonrestitution interest." We accept the State's concession

and remand to the trial court to amend the judgment and sentence accordingly.

Hawkins also requests that we remand to the trial court to strike both the $500 Victim Penalty Assessment (VPA) and the $100 DNA collection fee imposed at resentencing. Consistent with Hawkins' argument, RCW 7.68.035 and RCW 43.43.7541 allow a court, upon motion by the defendant, to waive "any VPA" and "any fee for the collection of the offender's DNA imposed prior to July 1, 2023." The State concedes this point as well. Here too, we accept the State's concession and remand for the trial court to strike the DNA collection fee and VPA.

Finally, Hawkins ask us to remand for the trial court to consider waiving interest on restitution. Consistent with Hawkins' argument, a recent amendment to RCW 10.82.090 provides that the superior court "may elect not to impose interest on any restitution the court orders" and that this determination shall be based on factors such as whether the defendant is indigent. LAWS OF 2022, ch. 260, § 12. This new law applies here because this case is on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). The State does not object to remand for the trial court to consider waiving interest on restitution pursuant to RCW 10.82.090. We accept that concession as well, and remand to the trial court to address whether to waive restitution interest pursuant to the new statute.

### III

We remand to the trial court to determine whether to impose restitution interest after consideration of the relevant factors under RCW 10.82.090(2) and expressly strike from Hawkins' judgment and sentence the VPA, DNA collection

fee, attorney fees, criminal filing fee, extradition costs, appellate costs, supervision fees, collection costs, and nonrestitution interest.  In all other respects, we affirm.

Feldman, J.

WE CONCUR:

Chung, J.

Brennan, J